**INTERNATIONAL BANDING MACH. CO. v. AMERICAN BANDER CO., Inc.**

(District Court, S. D. New York. October 6, 1924.)

**I. Patents ⬤⟿328—No. 920,698, May 4, 1909, claims 22, 86, 87, 88, 96, and 97, for cigar banding machine, held not infringed.**

Wagner & Malocsay patent, No. 920,698, May 4, 1909, claims 22, 86, 87, 88, 96, and 97, covering device for banding and labeling cigars or other articles, *held* not infringed.

**2. Patents ⬤⟿168(2) — Patentee, having narrowed claim to obtain patent, may not thereafter claim for it the larger scope.**

Patentee, having narrowed his claim in order to obtain patent, may not give to claim as allowed the larger scope which it might have had without amendment.

**3. Patents** ⬳328—No. 1,261,832, April 9, 1918, claim 5, for cigar banding machine, held anticipated and invalid.

Malocsay patent, No. 1,261,832, April 9, 1918, claim 5, covering label conveyor device in machine for banding or labeling cigars or other articles, *held* anticipated by Britton patent, No. 956,473, April 26, 1910, and by Briggs patent, No. 1,101,507, and invalid.

**4. Patents** ⬳328 — No. 1,261,832, April 9, 1918, claim 6, for conveyor device in cigar banding machine, held not infringed.

Malocsay patent, No. 1,261,832, April 9, 1918, claim 6, covering label conveyor device in machine for banding or labeling cigars, *held* not infringed.

**5. Patents** ⬳168(2)—Court may not read into patent a descriptive word which patentee has himself deliberately canceled from claim as previously presented.

Court may not read into patent a descriptive word which patentee has himself deliberately canceled from claim as previously presented.

**6. Patents** ⬳328—No. 1,403,046, January 10, 1922, claim 3, for box-supporting shelf, held not infringed.

Malocsay patent, No. 1,403,046, January 10, 1922, claim 3, covering device comprising box-supporting shelf, with means for raising and lowering and for holding it in an inclined position, *held* not infringed.

In Equity. Patent infringement suit by the International Banding Machine Company against the American Bander Company, Inc. Bill dismissed.

Schechter & Lotsch, of New York City (J. Schechter and John L. Lotsch, both of New York City, of counsel), for plaintiff.

Charles Neave, of New York City (Merrell E. Clark, of New York City, of counsel), for defendant.

GODDARD, District Judge. This is a suit to restrain the alleged infringement by the defendant of three patents now owned by the plaintiff. The charge is the infringement of the following claims of patents: Wagner & Malocsay patent, No. 920,698, issued May 4, 1909, claims 22, 86, 87, 88, 96, and 97; Malocsay patent No. 1,261,832, issued April 9, 1918, claims 5 and 6; Malocsay patent, No. 1,403,046, issued January 10, 1922, claim 3.

The first two patents have to do with machines for banding or labeling cigars or other articles. The third relates to an adjustable shelf used in connection with the packing of the cigars after they have been banded. The defenses relied upon are noninfringement and/or invalidity of the claims in issue of the patents in suit.

Machines for banding, labeling, or wrapping all kinds of articles were well known many years before the plaintiff's patents were applied for. Apparently the use of machines for banding cigars has come into vogue in the last few years, and there are several reasons for this—among them, the increased cost of labor since the war. Then, the expense of banding by hand was 25 cents per 1,000 cigars; now it is more than double that. It costs something over 30 cents per 1,000 with the plaintiff's machine. It is also more sanitary, and this is something which the public has recently begun to value. Another reason is that banding machines were not profitable unless the output of cigars was larger, and in late years the tendency has been toward the consolidation of companies and factories, and cigars are now made in fewer, but larger, factories than formerly. And another reason, many more cigars are now banded than ever before, to prevent substitution and "box stuffing" for widely advertised and well-known brands.

In 1917 the plaintiff began to exploit and market its machines, and has done it so very effectively that now its machines are banding all the cigars in the United States which are not banded by hand. The Malocsay machine seems to have been the first machine to band packed cigars and return them to the same position in the box which they held before being removed for banding; this is done by the band-applying mechanism which was devised for it. But there are no claims in issue referring to that band-applying mechanism per se, so its success in this respect cannot be considered as aiding them in this suit. Moreover it is not even asserted by plaintiff that the defendant's band-applying mechanism resembles the ones on its machines.

Wagner & Malocsay Patent, No. 920,698.

[1] The claims of this patent which are in suit are Nos. 22, 86, 87, 88, 96, and 97, all of which relate solely to the sheet-supporting and separating device. Claim 96 deals more particularly with the magazine which holds the pile of bands:

"96. A machine of the class described, provided with a label holder having oppositely disposed V-shaped standards for the ends of a pile of bands or labels to abut against to center the pile of bands or labels, means for adjusting the said standards toward or from each other, and rods adjustable toward and from each other and engaging opposite sides of the pile of bands or labels."

Apparently the use of these V-shaped standards proved, as a practical matter, to be undesirable, or at least unnecessary; for the plaintiff itself does not use them. There must be a magazine or holder for the pile of bands, and it has been customary to have this holder so constructed as to be adjustable for various sizes. In the one under consideration, they followed the plan by having the pile kept in place by adjustable side and end rods.

At page 9 of Defendant's Exhibit A, the reproduction of Figs. 10, 14, and 16 of the Wagner & Malocsay patent show their magazine, which comprises the slidable end standards $D^3$ which are adapted to be held in adjusted position by the thumb screws $D^4$, and the slidable side rods $D^6$ adapted to be held in adjusted position by the thumb screws $D^7$. That this method of obtaining adjustability in sheet magazines is old is shown, for instance, by the patent to Leffler, No. 669,174, March 5, 1901, particularly Figs. 7, 8, and 9 at page 72 of Defendant's Exhibit B. The magazine of this patent is formed of the end and side rods $j^1$, all of which (except those unlettered in Fig. 9) may be adjusted in the slots $j^2$ by means of the screws $j^4$ "to adapt the holder (magazine) for various sizes and shapes of labels" (page 2 of Leffler patent, line 79).

An examination of it demonstrates that the defendant's machine does not have "V-shaped standards," and this was admitted by plaintiff's expert. The plaintiff cannot prevail upon this claim, not only for these reasons, but also because Muslar, in his patent, No. 824,569, June 26, 1906, Fig. 13 (page 88 of Defendant's Exhibit A), disclosed adjustable V-shaped standards for the ends of a pile of labels, almost exactly like those of the Wagner & Malocsay patent and for the same purposes. Claims 22, 86, 87, 88, and 97 are all claims relating to band or label separator.

An examination of the fundamental characteristics and method of operation of the Wagner & Malocsay separator shows that in operation the stack of bands is supported alternately first or "normally by supporting rods," or the fingers $OO$ as indicated in Defendant's Exhibit A, page 8, and Figs. 9 and 10, then by the suction chamber $E'$. This characteristic of the Wagner & Malocsay machine was plain in the demonstration of the actual operation of the machines which took place at the trial. In the Wagner & Malocsay machine, the fingers holding the pile had to be taken away before the lowermost band could be withdrawn, and to provide this support the suction chamber $E'$ was interposed. The principle upon which the defendant's machine works is quite different.

Wagner & Malocsay have a vertical magazine or holder for the bands, so that the full weight of the pile is directly upon the bottom. The defendant's magazine is vertical at the top, but curves around so that at the bottom it is horizontal as indicated in Defendant's Exhibit A, page 12. This curve reduces to a large extent the pressure or weight upon the supporting ledges 64, the weight of the pile being distributed around the curve. The ledges 64 are not movable like the fingers $OO$ which support the pile in the Wagner & Malocsay machine.

The following is a comparison of the means employed in separating or withdrawing for separating or withdrawing the bands—Wagner & Malocsay machine, referring to Defendant's Exhibit A, page 9: As stated in the patent (page 3, line 128 et seq.): "The pile is normally supported by a pair of longitudinally extending supporting rods $O$ projecting from the plates $O'$ mounted to slide longitudinally in guideways $D^9$." Figs. 9, 15, and 16 show these slidable rods or fingers $O$ in their forward or supporting position, the pile being supported thereby. In the operation of the separating device these rods or fingers $O$ slide or reciprocate horizontally, back and forth from their supporting position to their non-supporting position.

The U-shaped suction chamber $E'$ "straddles the table $A'$ and the carrier $B$, and is intermittently moved up and down" (patent, page 4, lines 53–55); that is, it moves from the position of Fig. 9 to that of Fig. 10 and down again. Referring to Defendant's Exhibit A, page 12:

Fig. 1 shows the pile "normally supported" by the "supporting rods" or tongues $OO$. As clearly appears in this figure, "the upper or suction ends of the suction chamber $E'$ are beveled downwardly and outwardly * * * and are provided with supporting plates $E^8$ (patent, page 5, line 3 et seq.). The U-shaped suction chamber moves up to the position of Fig. 2, where it, or, more accurately, its "supporting plates, $E^8$," engage the lowermost band or label of the pile, "so that the pile or bands or labels $C$ is supported by the suction chamber $E'$ for the time being, to allow of withdrawing the supporting arms $O''$" (line 10 et seq.).

Fig. 2 shows the positions of the parts after the suction chamber $E'$ has taken over the support of the pile from the fingers or tongues $OO$ but before these fingers or tongues have actually been withdrawn; and this figure brings out one of the purposes of beveling the ends of the U-shaped suction chamber, namely, to prevent interference between those ends and the fingers $OO$.

Fig. 3 is the same as Fig. 2, except that the fingers or tongues $OO$ have been withdrawn. The pile is still supported by the U-shaped suction chamber $E'$. Now the suction valve operates "so as to cause a suction in the chamber $E'$, whereby the ends of the lowermost band or label are sucked down onto the beveled ends of the suction chamber $E'$ " (line 21 et seq.). "When this takes place, a space is formed between the ends of the lowermost band or label and the ends of the following band or label next above, so that the supporting arms $O$ can now return to a supporting position for supporting the pile of bands or labels $C$, except the lowermost one now adhering to the suction chamber $E'$ " (line 26 et seq.). Fig. 5 shows the supporting position ready to take over the support of the pile upon the descent of the suction chamber $E'$ with the separated band or label (Fig. 6).

The portion just quoted from Wagner & Malocsay's patent brings out the primary purpose of the beveling of the ends of the U-shaped suction chamber, which is to enable the suction at those ends to band down the ends of the lowermost band and thus form spaces into which the supporting fingers $OO$ may pass in returning to their supporting position. Not only the reciprocating fingers or rods $O$, but also the reciprocating U-shaped suction chamber form supporting devices and come into play alternately to support the pile, and that they are the only means shown in the patent for preventing the pile from falling out of the bottom of the magazine. If the magazine were operated without the reciprocating fingers, or without the U-shaped suction device, not only would it fail to separate the bands from the pile, but the pile of bands would fall down through the bottom of the magazine, instead of the bands being separated from the pile, one by one.

Of course, if Wagner & Malocsay had made their supporting fingers $OO$ stationary, so that they would support the pile at all times, instead of only intermittently, there would have been no need of causing the suction chamber $E'$ to act as a support for the pile at any time. But it was of the

essence of the Wagner & Malocsay invention that the supporting fingers $OO$ should be withdrawn from supporting position, to facilitate the removal of the lowermost sheet, and they could not be so withdrawn without first interpositing another support, such as the suction chamber $E'$, to prevent the pile from falling out of the magazine.

## Defendant's Machine.

In the defendant's machine the only things that take part in the separation of the sheets are the magazine itself, which is designated as *9, 10*, in the illustrations on page 2 of Defendant's Exhibit A, together with its supporting ledges *64*, the stationary suction chamber *14*, the clamping finger *40*, and the separating fingers *44*.

Starting with the parts in the position shown in Fig. 9, one band *65* having just been removed from the magazine, we will assume that this band has been conveyed out of the way by the swinging arms *16A*. The pile of bands is prevented from falling out of the magazine by the ledges *64;* since the magazine is horizontal at the lower end, the pressure against these ledges is slight. The magazine now swings forward from the position of Fig. 9 to that of Fig. 5, where the central portion of the lowermost band engages the central suction head or sucker *14* in order that it may be gripped by the suction in that head. Following along in the words of defendant's expert, Mr. Bentley, which seem to give an accurate description:

"The band is not pressed against the central sucker, nor does the central sucker support it in any way. The band simply stands flush with the front face of the central sucker. * * * The suction is then introduced into the central sucker *14*. The effect of that is simply to hold the middle of the band against the face of the sucker. * * * Then the magazine begins to swing back, and the magazine is forced back by the power which drives the machine, and, since the central sucker is gripping the center of the band *65*, a slight curve is produced in the band which affords a small space into which there can enter the three fingers *40* and *44*, as shown in Fig. 7. * * * This central sucker does not pull out the band from the stack. It merely forms this initial separation space into which the fingers *40* and *44* can enter. * * *

"After these three fingers have entered, the middle one, being rigid, clamps the band to the face of the central sucker. Then the suction is switched away from the cen-

tral sucker, because there is no longer any need of it; this finger *40* clamping the band against the face of the sucker. Then, as the magazine continues to recede, the band is held in the middle by this finger *40* and, at its two ends by the flanges *64*, so that the backward movement of the magazine pulls the band out from the grip of the end flanges *74* and the ends of the band snap of their own resiliency into the position shown in Fig. 8, where the band *65* is again straight, lying at its center against the central sucker *14* and at its ends against the transfer arms *16A*. This pulling out of the band which I have just mentioned is performed by mechanical force of the machine. The band is positively held mechanically in the center by the finger *40*, and the magazine moving back causes the band to be stripped out from the grip of the flanges *64* and the band is then separated."

In this description of the operation of the defendant's device, Bentley disregarded the action of the fingers *44;* but these fingers do not in any way affect the fundamental principle of operation of that device. This was clearly demonstrated at the trial, when the device was found to operate satisfactorily after the fingers *44* had been removed. The purpose of these fingers is to split the first band from the band behind it, should they stick together; and as the magazine moves back from the position of Fig. 7 to that of Fig. 8, the fingers *44* move back with it and thus overcome any tendency which there may be for the second band to be carried out with the first. The function of these fingers *44* is not, in any sense, to support the pile. Wagner & Malocsay avoid stripping the endmost band from the supporting ledges or fingers by withdrawing those fingers temporarily; and while those fingers are withdrawn the pile is supported by the suction chamber, which draws the ends of the band out of the magazine. The defendant, on the other hand, actually strips the band from stationary supporting ledges, this stripping being facilitated by the reduction of pressure upon those ledges resulting from its curved magazine. At no time does the defendant employ its suction device as a support for the pile.

Claims 88 and 97 read as follows:

"88. A machine for applying bands to cigars and other articles, provided with a support adapted to engage the lowermost band of a pile of bands, to support the latter and to form a space between the lower-most band and the next one above, and means adapted to pass into said space to support the pile of bands on withdrawing the said support."

"97. In a machine of the class described, means for holding a pile of labels, said means including reciprocating tongues which at times support said pile, pneumatic means adapted to rest against the lowest label of said pile and hold said lowest label slightly flexed, and means for reciprocating said tongues so that they support said pile when not supported by the said pneumatic means and cause said tongues to enter between said lowest label and the pile while said lowest label is flexed."

Claim 88—the "support adapted to engage the lowermost band of a pile of bands to support the latter and to form a space between the lowermost band and the next one above" is the U-shaped suction chamber *E'* of the patent. This device supports the pile of bands as shown in Fig. 3, at the top of page 12 of Defendant's Exhibit A, and forms a space, or spaces, between the lowermost band and the next one above, as shown in Fig. 4. And the "means adapted to pass into said space to support the pile of bands on withdrawing the said support" are the fingers or tongues *OO* which, as shown in Fig. 5 (at the top of page 12, Exhibit A), pass into the spaces formed by the beveled ends of the suction chamber *E'* and support the pile when the chamber *E'* descends as shown in Fig. 6.

Claim 97—the "reciprocating tongues which at times support the pile." These are the reciprocating tongues *OO* (sometimes referred to as arms, rods or fingers) which at the times illustrated in Figs. 1 and 6 at the top of page 12 of Defendant's Exhibit 12, support the pile. The "pneumatic means," the next element of the claim, is the suction chamber *E'* which, as described in the claim, is "adapted to rest against the lowest label of said pile and hold said lowest label slightly flexed," as shown in Figs. 4 and 5. The claim then goes on to say that the tongues *OO* are reciprocated "so that they support said pile when not supported by said pneumatic means" (see Figs. 1 and 6). This expression can have no other meaning than that the supporting tongues *OO* and the suction chamber *E'* alternate in furnishing the support for the pile, and that the pile is supported at all times by one or the other of these means. The remaining words in the claim specify how the tongues get into supporting positions.

These two claims constitute merely two different ways of expressing the alternating support principle which is fundamental in Wagner & Malocsay's separator. No separator can infringe either of these claims, unless it embodies that principle. Therefore I find that the defendant's machine does not have the essential elements of claims 88 and 97, and accordingly does not infringe them.

Claims 22, 86, and 87 read as follows:

"22. A machine for applying bands to cigars and other articles, provided with a vertically disposed U-shaped suction device and movable means for supporting bands above said device, so that when said device is raised it engages the lowest band and when lowered withdraws it from the pile, leaving all other bands in said supporting means.

"86. A machine for applying bands to cigars and other articles provided with a band-transferring device, comprising a U-shaped suction chamber beveled and open at the ends for engagement with the ends of a band, means for imparting a reciprocating motion to the said chamber and a valve for intermittently controlling the suction action of the said chamber.

"87. A machine for applying bands to cigars and other articles, provided with a band-transferring device comprising a U-shaped suction chamber beveled and open at the ends for engagement with the ends of a band, means for imparting an intermittent reciprocating motion to said chamber, and a valve for intermittently controlling the suction action of the said chamber, the said valve cutting off the suction action during the time the chamber is traveling in one direction, and permitting suction during the time the chamber is traveling in the opposite direction."

These claims relate to the separator, and not to the appliances for conveying the bands to the banding mechanism; this separator is the U-shaped suction device $E'$ shown on page 9 of Exhibit A, which constitutes one of the main elements of their separator. The reason for its being "U-shaped" is to allow it to get in contact with the band and at the same time permit $B$, the conveyer, to pass through it. The work of the "U-shaped device $E'$" is done as soon as the carrier $B$ takes hold of the band, for then not only is it no longer required to support the pile, the fingers $OO$ having resumed their position; but the separation of the band from the pile has been completed and the band delivered to the carrier for conveying to the cigar or other article. In the defendant's machine, the swinging device $16A$ has no part in the separation of the bands from the pile or in supporting the pile of bands while the separation takes place. The plaintiff's claim could not cover this swinging member $16$, $16A$, and the central sucker $14$ is not "U-shaped." Moreover, claim No. 22 states that the "U-shaped" suction chamber shall be "vertically disposed," and neither of the suction devices on defendant's machine are "vertically" disposed.

[2] When the Malocsay patent was secured, the word "moveable" was inserted in the claim in describing the means for supporting the pile. This was done to meet the objection of the Patent Office, because of the claims in the prior Boyd patent, No. 547,673, granted October 15, 1895, Defendant's Exhibit B, page 14, and under the rule in Weber Electric Co. v. Freeman Electric Co., 256 U. S. 668, 677, 41 S. Ct. 600, 65 L. Ed. 1162, the patentee, "having narrowed his claim in order to obtain the patent," may not give to the claim the larger scope which it might have had without the amendment. In my judgment, none of the said claims of the Wagner & Malocsay patent is infringed by the defendant's machine.

The Malocsay Machine Patent No. 1,261,832, Issued April 9, 1918.

[3, 4] The patent discloses a complete banding or labeling machine. The machine of the patent was designed primarily for banding so-called "packed" or "boxed" cigars, but is also adapted, as the evidence shows, for banding loose cigars. The patentee states that the object of his invention is "to provide a machine of this class which will securely, accurately and rapidly apply bands to cigars and other articles where an adhesive is used and it is desirable to return the cigars to the box whence they came without turning them in any way, so that if they happen to be dry they will go back exactly as they came out, and thereby escape all injury." Patent, page 1, lines 10 to 16.

The band magazine of this machine is of the same general character as that referred to in the Wagner & Malocsay patent, it being adjustable to accommodate bands of various widths and lengths; the lowermost band being withdrawn from the pile by suction. The patent utilizes the U-shaped suction member for flexing the lowermost label from the pile and form injecting into the space formed by the flex-

ing of the lowermost band, movable members O (referring to Plaintiff's Exhibit 3, sheets 9, 13, and 14), which at times support the pile when not supported by the U-shaped member. After the band has been withdrawn from the pile by the U-shaped member, it is "carried down to what the patent calls a reciprocating conveyer marked 63." The band is then (adopting the description of plaintiff's expert, Mr. Dyer, which seems to be correct) "deposited upon this conveyor marked 63 in Fig. 8 of the patent, and air is then released from the U-shaped device, so as to release the ends of the band, and air is applied to the ends of this reciprocating conveyer, so that the band will be stuck right on the end of that conveyer and accurately placed thereon exactly as it was aligned thereon by means of the magazine. Having adjusted the bands in the first instance in the magazine, we do not want to disturb that adjustment as the band progresses towards the wrapping or banding mechanism. In other words, in going from the magazine position to the banding mechanism, it stops and gets wet, and moisture is applied to it to moisten the gum, and then it steps onto the banding mechanism and then returns to the magazine to pick up a new band. Now, it stops for a moment, you see, and then goes forward, and now comes back and picks a new band, and now it goes forward. You see how it moistens. Now, if your honor will step this way, you can see how the bands are applied. Now, the band, having been removed from the bottom of the pile and carried to the moistening pad first, is then carried onto the band-applying device which comprises a head marked 183 in Fig. 27 of the Malocsay patent, this also having a suction device, so that the band is removed from the reciprocating conveyer and transferred by suction to the head 183, which is this vertical reciprocating plunger which is in that machine. That plunger moves down, as shown in Fig. 29, to carry the band and apply it to the cigar, and then by means of belts shown in Figs. 29 to 32, which are carried on small pivoted arms, the one edge of the band is wrapped around the cigar at one time, and then the other edge is wrapped around the other; that is, one edge is moved around on the first edge, after which a pad shown in Fig. 32 and marked 194 is moved up to lightly compress the cigar and cause the overlapping edges of the band to stick together. Afterwards the gripping fingers as shown in Fig. 33

and marked 195 grip the cigar and pull it to the right towards the discharge end of the machine. * * * The band-applying devices are of such a character as will apply the bands accurately at the desired point on the cigar, and they make use of belts, so that the mechanism accommodates itself to irregularities in the varieties and shapes of the cigars."

### The Defendant's Machine.

The band is separated from the pile and delivered to the swinging conveyer 16A shown on page 2 of Defendant's Exhibit A. This conveyer 16A then swings down to the position of Fig. 11, where the gummed end of the band is moistened by the moistening pad 80. The conveyer moves the moistened band from the position of Fig. 12 to that of Fig. 14, where it holds it over the cigar to be banded as shown in Fig. 15. The string S now descends with its guide rolls 21, strips the band from the swinging arms 16, and delivers it to the cigar as shown in Fig. 16. At the time this stripping takes place, the band is released from the arms 16 by a complete, or substantial, cutting off of the suction in those arms. At this point the band-applying mechanism comes into play.

These differences between the plaintiff's and the defendant's machines differ in the following aspects: Their separators and also their conveyers operate upon different principles, Malocsay's conveyer reciprocates back and forth in a straight line, while the defendant's swings about a pivot from a horizontal to a vertical position. In Malocsay's machine the band is horizontal to the magazine, horizontal when received by the conveyer, horizontal when moistened, and horizontal when transferred to the band-applying mechanism. In the defendant's machine, on the other hand, the band lies vertically—i. e., on edge—in the magazine, is vertical when delivered to the conveyer, diagonal when moistened, and horizontal when delivered to the cigar. In the Malocsay device the band is lifted from the top surface of the conveyer by the suction head 178, which constitutes part of the band-applying mechanism, and is held by the suction in that head during the band-applying operation. But in the defendant's machine the band is stripped or knocked off the bottom of the conveyer 16 by a string, which delivers it, not directly to the band-applying mechanism, but to a cigar, and the latter mechanism then comes along and proceeds to wrap it around the cigar. The de-

fendant has no suction means which take any part in the removal of the band from the conveyer, and none which hold it during the applying operation.

Claim 5: "5. In a machine of the class described, the combination of the band container, of a reciprocating conveyer, suction means for withdrawing bands individually from said container, means on said conveyer, for receiving the band from the suction means and holding the same on the conveyer, moistening means and band-applying mechanism, conveyer adapted to transfer the band to the moistening means and thence to the band-applying means."

The words "of the class described" are very evidently intended to refer to machines for banding other articles, as well as cigars, for Malocsay, when describing the operation of his machine, speaks of putting in place the cigars "or other articles to be banded" (page 8, lines 81, 82), and in stating what his patent relates to, and the object of his invention, the patentee says: "To provide a machine of this class which will * * * apply bands to cigars and other articles. * * *" Patent, page 1, lines 10 to 16. So that all prior machines of this class are to be considered in determining the validity and scope of the Malocsay claims.

Several patents were referred to upon the trial by defendant's counsel as anticipating this claim, unless the claim be so limited as not to read upon the defendant's machine; but I think it only necessary to consider the Britton and the Briggs patents.

### Britton Patent, No. 956,473, Issued April 26, 1910.

The machine of this patent is for wrapping articles, such as yeast, chewing gum, soap, and other rectangular articles. Referring to the patent, which is included in Defendant's Exhibit C, page 79:

Fig. 12 of the Britton patent (page 89 of Exhibit C) shows the pile of labels or wrappers 16 and the swinging suction separator 58 which takes the wrappers one at a time from the pile and then swings in a contraclockwise direction, as indicated by the arrow and dotted lines in Fig. 12, until it finally reaches the position shown in Fig. 13. In this position of Fig. 13 the wrapper 16 is in a horizontal position, and is being taken over from the swinging suction separator 58 by the jaws 86 and 88 of the reciprocating conveyer. The reciprocating conveyer, bearing the jaws 86 and 88 in which the wrapper is thus gripped, moves to the left and passes first over the

roll, applies an adhesive to a narrow margin 15 of the wrapper (Fig. 19). The reciprocating conveyer continues its movement to the left, finally depositing the wrapper 16 upon one of the articles 32 which is to be wrapped, as shown in Fig. 8, page 87. Then the wrapping or applying mechanism comes into operation, and applies the wrappers 16 to the articles in such a way that the gummed margin or edge 15 of the wrapper, which is shown in Fig. 8, is folded over the opposite edge in much the same manner as is done in applying a band to a cigar, whether by hand or by machine.

If this claim 5 of the Malocsay patent be given a fair construction, it is anticipated by Britton; for Britton has what would be included in a "band container," for, although the pieces of paper are referred to as "wrappers," they are placed around the article in the form of a band. Britton also has the following elements: "A reciprocating conveyer," which carries the grippers 86, 88, Fig. 13; "suction means for withdrawing bands individually from said container," which is the swinging suction device 58 shown in Fig. 12; "means on said conveyer for receiving the bands from the suction means and holding the same on the conveyer," which might be read upon the Britton grippers 86, 88. It also has the moistening roller 14 in Figs. 12 and 19 and the band-applying means in Figs. 8 and 11. In addition to reciting these various elements, the claim specifies that the conveyer shall be "adapted to transfer the band to the moistening means and thence to the band-applying mechanism." That is exactly what the conveyer of the Britton patent, with its grippers 86, 88, does after receiving the wrapper from the suction separator.

[5] The plaintiff suggests that, in order to differentiate the claim from the Britton construction, the word "suction" shall be read into the claim as applying to the "means on said conveyer for receiving the band from the suction means and holding the same on the conveyer," for in the Britton structure these means are not suction means, but are the mechanical grippers 86, 88. The word "suction" was deliberately canceled from the claim by Malocsay after previously presenting it with the word "suction" included, apparently for the reason that he did not wish the claim to be limited to a machine in which the means on the conveyer for performing the functions mentioned were suction means, and for me now to put back into the claim this limit-

ing word "suction," after the patentee himself has, for his own good reasons, taken it out, seems to be going further than I should. Republic Iron & Steel Co. v. Youngstown Sheet & Tube Co. (C. C. A.) 272 F. 386, 390; Universal Brush Co. v. Sonn et al., 154 F. 665, 83 C. C. A. 422. To do so would be to disregard White v. Dunbar, 119 U. S. 47, 51, 7 S. Ct. 72, 30 L. Ed. 303. Therefore I cannot escape the conclusion that this claim reads on the Britton prior device, which therefore anticipates and invalidates it.

## The Briggs Patent.

During the trial I got the impression that the Briggs patent, No. 1,101,507, issued June 23, 1914, a machine for applying bands to cigars and other articles, substantially anticipated claim 5 of the Malocsay's patent, and this has been confirmed by my further examination, although the complete machine, as constructed by Briggs, was not very reliable or successful commercially, but its defects were apparently due to other things than the general arrangement of mechanisms referred to in the Malocsay claim 5. Briggs has a suction separator, which is called for under claim 5, for it does not specify any particular type of separator. The plaintiff contends that in respect to claim 5 and Briggs' patent there is a substantial difference, in that claim 5 reads: "Said conveyer adapted to transfer the band to the moistening means and thence to the band-applying means." In Malocsay the moistening takes place before the band is carried to the band appliance; in Briggs, the band is carried to the band appliance before moistening. The same two acts are performed, and the chance of sequence is not sufficient to obviate the otherwise anticipation of this claim.

Claim 6: "In a machine of the class described, the combination with a band conveyer, of means to impart motion thereto, moistening means to which a band carried by said conveyer is brought, band-applying means adapted to receive the moistened band from said conveyer and suction means in conjunction with said band-applying means to remove the band from said conveyer and hold the same while it is being applied to the cigar."

The defendant's machine does use suction means for holding the band on the conveyer, but does not employ suction to remove the band from the conveyer. It is removed by the string S, referring to Plaintiff's Exhibit A, page 4, Figs. 15, 16. The defendant does not infringe this claim.

## The Malocsay Shelf Patent No. 1,403,046, Issued January 10, 1922.

[6] Claim 3, which is the only one in suit, reads as follows:

"A device of the class described, comprising a box-supporting shelf, means for raising and lowering the same, and means for holding said shelf in an inclined position."

The plaintiff urges that this claim includes all inclined shelves suitable for supporting a cigar box, and which shelves have means for raising or lowering them. That this reading is the correct one I think is unlikely; such a combination would hardly be new or patentable. Of course, there may be special means for raising and lowering the shelf which have patentable novelty.

The facts are that the shelf on the plaintiff's machine is not only movable up and down, but the shelf may be adjusted to various angles, while the inclination on the defendant's machine is permanent, and only the shelf itself can be raised or lowered. I have no doubt, after reading the other claims of the patent and seeing the shelf, that the words in the claim, "means for holding said shelf in an inclined position" were not intended to refer to a permanently inclined shelf, but were intended to cover a shelf where the degree of the incline was adjustable; otherwise, the claim would have simply said: "A device of the class described, comprising a box-supporting" inclined "shelf. * * *" Reading the claim with this effect, it is not infringed by defendant's shelf.

In accordance with the foregoing, the bill is dismissed, with costs.