**ALUMINATE CO., Inc., v. AKME FLUE, Inc.**
**No. 1685.**

District Court, D. Maryland.
June 8, 1931.

Bartlett, Poe & Claggett, of Baltimore, Md., for plaintiff.

Venable, Baetjer & Howard, of Baltimore, Md., for defendant.

WILLIAM C. COLEMAN, District Judge.

The present suit arises under the patent laws and is based upon alleged infringement by the defendant of a patent upon a device for extracting soot and grease from flue gases escaping from gas ranges. The patent, No. 1,722,005, was issued July 23, 1929, to Joseph A. McCarthy, and the plaintiff now owns it by virtue of assignment. The patent contains sixteen claims, but infringement is based upon six claims only, namely, those numbered 9, 10, 11, 12, 15, and 16. Defendant's device, of which plaintiff complains, is manufactured and marketed under patent No. 1,771,024, issued July 22, 1930, to Robert S. Bacheler and assigned to the defendant company.

Plaintiff's device is summarized as follows in the McCarthy specifications: "This invention relates to a means for extracting soot and grease from flue gases by leading same through a collar on top of which is supported a curved or sector shaped hood with filtering material supported in and against the curved wall of the hood. All particles from the ascending grease and soot laden vapors impinge on the filtering material, the hot gases escaping after depositing said soot and grease in the filtering material. This construction is an absolute guarantee against flue congestion because the clogging up of the filtering material would in no way interfere with combustion or the circulation of air or gases in the flue." Defendant's device is described as follows in the specifications of the Bacheler patent: "This invention relates to a heat diverter and more particularly to a flue cover and deflector of the type generally associated with the flue collar or stack of a gas cooking range for the purpose of covering the top of the flue or stack and deflecting the gases comprising the products of combustion in a downwardly and forwardly direction whereby their tendency to be deposited on the walls and neighboring objects is reduced to a minimum.

"The object of this invention is to provide a heat diverter that may be easily attached to a flue, and also easily demountable with respect thereto for purposes of cleaning or replacing the same, said heat diverter being of an inverted trough shaped form and provided with spaced longitudinally positioned openings in the front of said heat diverter to facilitate the discharge of the products of combustion gently and without violence and discomfort in a downwardly and forwardly direction."

Shorn of technical phraseology, both devices, as embodied in the five claims of the Bacheler patent and in the six claims of the McCarthy patent here in suit, may be

described generally as a structure to be attached to a gas range or stove for the ventilation of the oven, consisting of a demountable tin collar or chimney attached to the outlet flange of the gas range and upon which there is a cowl or hood of tin, or other suitable material, having an interiorly curved surface against which the rising gases impinge and are deflected forwardly toward their point of discharge, which is accomplished by reason of the fact that the top and side walls of the hood extend beyond the collar and have front and bottom openings in this extension. Briefly stated, the object of the curved hood with its openings, in the Bacheler patent, as disclosed by the specifications, drawings, and claims, is to deflect the current of grease and soot laden gases downwardly after rising vertically from the oven, so that they do not diffuse themselves into the room or against the users of the range, but are thrown downwardly onto the top surface of the range, from which the accumulated grease and soot may be more easily removed. There is no provision for any medium, within the device itself, for extracting or disposing of the soot or grease. In the McCarthy patent, the object of the curved hood, with its openings, as disclosed by the specifications, the drawings and the ten claims not here in suit, is twofold—i. e. to serve as a case and support for the filtering medium, i. e. metal wool, or other suitable material, upon which the grease and soot are arrested; and (2) to serve as an outlet for the hot gases after separation and deposit of the soot and grease on the filtering material. However, in the six claims of the McCarthy patent that are here in suit, while each describes in substantially similar language the curved hood with front opening, or with both front and bottom opening, there is no embodiment of the filter device in any form.

Plaintiff asks for injunctive relief, for an accounting, and for treble damages pursuant to the provisions of the statute. Rev. St. § 4921 (35 USCA § 70).

Defendant resists the charge of infringement on four separate grounds: (1) That the claims of the McCarthy patent in suit are invalid on the ground that they are broader than the McCarthy invention as described in the specifications and drawings, unless by construction those claims be limited to a collar and hood equipped with a filter mat located at one side or against one wall of the hood, and that, if so construed, the claims are not infringed by defendant's device; (2) that the claims of the McCarthy patent in

suit are invalid because addressed to matter not described in the specifications which form part of the original application for the patent, and more particularly, because such alleged new matter is not supported by the oath of the inventor in accordance with the requirements of the patent law; (3) that defendant's device, manufactured and marketed under the Bacheler patent, is radically different, structurally and functionally, from that of the McCarthy patent, and more particularly, since the McCarthy patent, if not in fact void for anticipation by prior patents, is at most a mere improvement over an invention in a crowded art, and is in no sense a pioneer invention, infringement, therefore is not shown to have occurred; and (4), that the McCarthy patent is void in toto, because of the marketing by plaintiff's predecessor in business of the McCarthy device more than two years prior to the patent application.

At the commencement of the hearing plaintiff filed a motion to strike out paragraphs 9, 13, and 16 of defendant's answer. Since a ruling on this motion was deferred, and since it now appears that the grounds for the motion, and the alleged objectionable paragraphs of the answer relate to questions of defense which, for the reasons hereinafter explained, it becomes unnecessary to decide, the abstract merits of plaintiff's motion need not be considered, and so it may be overruled without affecting the result.

■ Addressing ourselves to the first of the four above enumerated grounds of defense made by the defendant company, it is, of course, well settled that the language of every claim in a patent must be viewed in the light of the specifications and drawings, and that a claim broader than the described invention is void. Carleton v. Bokee, 17 Wall. (84 U. S.) 463, 21 L. Ed. 517; Victor Cooler Door Co. et al. v. Jamison Cold Storage Door Co., decided by the Circuit Court of Appeals for this Circuit, 44 F.(2d) 288; Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp., also decided by the Circuit Court of Appeals for this Circuit, 40 F.(2d) 910; In re. Burnelli (Cust. & Pat. App.) 38 F.(2d) 891; General Electric Co. v. Nitro-Tungsten Lamp Co. (C. C. A.) 266 F. 994. It therefore becomes necessary, ab initio, to determine whether or not, as defendant contends, the filtering material, with its location in the McCarthy patent, is an indispensable component part of the patented device. If it is, since it is not expressly referred to in any of the six claims upon which plaintiff relies in the McCarthy patent, those

claims must be held to be void as not responsive to the specifications and drawings, unless they may by implication be construed to include the filtering material.

There are a number of reasons which compel the conclusion that all of the six claims in suit are too broad to permit, by any reasonable interpretation, of their being brought within the specifications and drawings, and they are therefore void. In the first place, the specifications expressly state that the McCarthy device is an improvement upon the same inventor's device covered by his patent No. 1,620,266, issued March 8, 1928. In the specifications of this earlier patent it is stated:

"The primary object of the invention is to provide means for extracting soot and grease from flue gases arising from gas stoves, or the like, for preventing the scorching and staining of the surrounding walls and woodwork.

"I am familiar with the attempts made to extract and consume the soot and grease from heated gases arising from gas stoves, more particularly the oven portions of the same, by locating a body or bodies of metal wool in the flues through which said gases pass. I have discovered, however, that small particles of the wool disintegrate and fall back into the chamber from whence the gases came. If this chamber is the oven of a stove, the small metallic particles are apt to lodge in the food being baked, with the result that the latter may be poisoned.

"According to this invention, I have discovered that by contacting such gases with a closely meshed metal gauze body or bodies for a brief interval during its passage through a flue, the soot and grease present in the gases will be extracted and the purified gases will be permitted to pass on."

The improvement over this earlier patent is claimed to lie in the fact that the filtering material is changed from a position traverse to the bore of the flue, to the back or curved wall of the hood. This is expressly so stated in the opening paragraphs of the specifications in the second McCarthy patent as follows:

"The inventor, being familiar with flue construction and the means for extracting soot and grease from flue gases, has seen the necessity for making an improvement over the specific invention described and claimed in his existing patent No. 1,620,266, dated March 8th, 1927. Heretofore soot and grease extractors for gas ranges have had the filtering material traversing the bore of the flue, and said material therefore sooner or later becomes clogged and causes congestion in the flue, with the attending danger of a carbon monoxide gas being given off from the gas range due to incomplete combustion.

"This invention relates to a means for extracting soot and grease from flue gases by leading same through a collar on top of which is supported a curved or sector shaped hood with filtering material supported in and against the curved wall of the hood."

In the second place, the remarks of the inventor, McCarthy, before the Patent Office, as evidenced by the file wrapper, at the time he was prosecuting various amended claims which ultimately resulted in the issuance of the patent with the claims which are now in suit, definitely substantiate a finding that the filtering material is an indispensable element of the patent. For example, on November 6, 1928, McCarthy said, in prosecuting these amendments: " * * * A metallic mat is necessary to eliminate grease and soot, under the high temperature of a gas range where applicant's device is adapted for use with a temperature as high as 500° F. For filtering grease and soot at such high temperature a metallic mat is necessary and such gases must pass through the same to leave and deposit the soot and grease." And again on April 24, 1929, he said: "The new claims refer to a flue attachment for the outlet vent of a gas range for the purpose of removing soot and grease from gases and products of combustion outletting through the vent, the claims referring to a collar to be mounted upon the flue vent with a curved hood upon the upper end of the collar. * * * The hood is lined with an absorbent material for extracting soot and grease from gases and products of combustion passing through the collar and hood. The new claims presented herewith are drawn to cover these features. * * * "

Again, we find abundant support for the same conclusion in plaintiff's trade circular illustrating and advertising its device, and complaining that defendant's device merely imitates and infringes without giving the requisite results. For example, in this circular we find the following statements, accompanying which is a drawing of plaintiff's device in operation showing the filtering or absorbent material, and also a drawing simulating defendant's device in operation:

"You will note the Aluminate Deflector is so constructed as to allow the free and unimpeded escape of the products of combus-

tion with the grease and soot impinging the inner surface of the deflector, preventing same from escaping into the room. (Warm air ascends and unless deflected forward of the gas range, will draw the dust in the room to it, depositing same on the wall)."

"A glance at this device [illustrated by drawing of device similar to defendant's] will show you what is wrong with the construction. The 500 degrees of heat issuing forth from an oven with great velocity, do so in a cycle motion, with the result, that the products of combustion instead of having free passage, deflect back into the cap, causing congestion in the oven, improper combustion, (which is dangerous), sweating of the oven and linings with the final rusting of the range—giving it a short-life. In addition, this heat is deflected directly on top of the range and against the back strip, with the result same becomes badly scorched, the enamel cracking. This device has cast-iron sides, with a sheet steel top, so when the 500 degrees of heat hit these parts, the expansion of the sheet steel being greater than the cast-iron an opening on each side is created, where the products of combustion escape, at the same time badly scorching the edges of the sheet steel cover. This device has no absorbing material."

The completely impractical nature of plaintiff's device, if the filter material is discarded, is so apparent as also to lead to the conclusion that such material is an indispensable component part of the invention. The fact is not contradicted that, in the absence of the filtering medium in plaintiff's device as disclosed by both specifications and drawings, the hot gases carrying the soot and grease, or other deleterious matter, would be ejected for the most part, if not exclusively, through the front or vertical grilled opening of the hood for a distance of several feet forward or horizontally in the face or against the body of the person using the stove, which would obviously be so objectionable as to render the device unmarketable. This method of operation would be directly contrary to what we have seen to be the primary advantage of plaintiff's device as claimed in the specifications, in the statements before the Patent Office, and in its trade circular. The undesirable result is obviated in defendant's device by the fact that the primary opening of the hood is parallel with the top of the stove, and the vapors containing the grease or soot are projected by the semicylindrical wall of the hood through this opening, downward upon the stove, and not in an outward direc-

tion towards the operator. Some of the solids may adhere to the inner surface of the wall of the hood. A small portion of the grease or soot laden gases that escape may pass through the narrow openings or louvres in the front portion of the curved hood, particularly when the stove is first lighted, and before the vapors are moving sufficiently rapidly to insure their discharge through the primary opening at the bottom of the hood. When, however, the stove reaches a normally high temperature, the vapors are sufficiently heated so as to be impelled through this primary opening without backing up into the top of the hood; and even such small portion of the vapors as does circulate in this manner, will not pass out directly against the person using the stove.

Again, support for the conclusion that the filtering material is indispensable under a correct reading of plaintiff's device is borne out by the absence of any reference to a bottom outlet in McCarthy's original specifications or drawings, and by the fact that, in the specifications upon which the patent ultimately issued, the only reference is as follows: "The grill is spaced from the front wall of the collar to permit entrance of air or outlet for excess products of combustion as clearly shown in Figure 3." That such reference to the bottom opening as an "outlet" is merely incidental is further borne out by the fact that in none of the claims here in suit is any mention of it as such made. On the other hand, a bottom opening is a feature of five of the six claims that are in suit, namely, claims Nos. 9, 10, 11, 15, and 16. Claim No. 11, upon which plaintiff primarily relies to establish infringement, reads as follows: "A flue for gas ranges and the like comprising a collar, a curved hood attached to the upper end of the collar, said hood having top and side walls extending beyond one side of the collar with front and bottom openings in the extension." The remaining claim in suit, namely No. 12, does not call for a bottom opening, but for an "opening in the hood extending upwardly from the lower edge of the hood and at an angle to the lower edge * * *" of it, in short, the front opening covered by the perforated plate or grill.

Thus we find that the McCarthy device, from whatever angle analyzed, permits of but one and the same conclusion, namely, that the specifications and drawings contemplate a device by which only the filtered gases or vapors shall pass out through the hood, whether such exit be exclusively through the front or grill opening, or primarily

through such opening and secondarily through the smaller and lower outlet.

It is fundamental that where, as here, the patent is not a basic one, but one for a mere improvement in a crowded art, a construction must be given to it which limits it to the invention as clearly and definitely disclosed, and that any attempt to enlarge the scope of such a patent, the effect of which would be to enable the patentee to appropriate other inventions, must be forbidden. Chicago & N. W. Railway Co. v. Sayles, 97 U. S. 563, 24 L. Ed. 1053; Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 27 S. Ct. 307, 51 L. Ed. 645; Weber Electric Co. v. E. H. Freeman Electric Co., 256 U. S. 668, 41 S. Ct. 600, 65 L. Ed. 1162; Victor Cooler Door Co. v. Jamison Cold Storage Door Co., supra.

The burden of proving infringement is upon the plaintiff. For the foregoing reasons, we find that the plaintiff has failed to sustain this burden, and finding, as we do, that the claims of plaintiff's patent, upon which it relies to sustain its claim of infringement, are void because of their too great breadth and failure to conform to the specifications and drawings, it follows that the bill of complaint must be dismissed. It thus becomes unnecessary to consider any of the other grounds of defense urged by the defendant, although it may be pointed out that, in reaching the conclusion that we do with respect to the vital difference in construction and functioning of plaintiff's and defendant's device, even should we assume that the claims in suit could be construed to embrace filtering material—which we cannot do because, as we have seen, a claim broader than the state of the art will allow to the invention described, is not to be narrowed by a construction out of harmony with its language—the bill of complaint should be dismissed, since there still would be no infringement; defendant's device being totally devoid of any filtering medium.

In conclusion, we perhaps should allude to the fact that defendant has suggested that plaintiff, by falsely marking its products, has laid itself open to the penalties provided in section 4901 of the Revised Statutes (35 USCA § 50). We need not now pass upon this question because it does not appear from the pleadings that the defendant is in fact here claiming that it is entitled to invoke this provision of the law in this proceeding.

A decree will be entered dismissing the bill of complaint, with costs to the defendant.