### AMERICAN CAN CO. v. M. J. B. CO.*
No. 6155.

Circuit Court of Appeals, Ninth Circuit.
March 16, 1931.

John C. Carpenter, of Chicago, Ill., for appellant and cross-appellee.

*Rehearing denied May 11, 1931.

H. U. Brandenstein, of San Francisco, Cal. (Richard J. Cook, of Seattle, Wash., of counsel), for appellee and cross-appellant.

Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

This is an action for the infringement of patent No. 1,586,277, issued by the United States to John M. Young, now owned by the appellant, covering a familiar type of tin can, a right cylinder, used as container for food products, such as coffee, butter, etc. The type of can involved is one in which the cover is severed from the cylindrical body upon opening, by removing from the upper end of the outer cylindrical surface a tearing strip of familiar design. The object of the invention is to utilize the top portion of the can as a reclosure cover to be used after the can is opened by removal of the tearing strip, the cover fitting tightly enough to form a closure that will protect the contents of the can. The method of thus utilizing the top portion of the can for recoverage in order to protect the contents of the can is common in the canning industry. The contents are sometimes preserved by what is known as an outside slip cover, fitting over the outer portion of the can at the top (a familiar example of this type of cover being the old-fashioned tin dinner-pail). In appellant's patent the air-tight closure is effected by friction between a countersunk part of the top and a ring or bulge at the top of the can and on the face of its interior wall. When the top is forced down inside the can, this countersunk part of the top contacts with the bulge or ring on the inside of the can. Claims contained in the appellant's patent, issued May 25, 1926, known as the Young patent, deal with the latter form of can, in which the countersunk portion of the top, when removed and replaced for recoverage, upon depression comes in contact with an inner ring or bulge formed on the inside of the can, spoken of in the briefs as an inner fold, bend or bead.

In view of the fact that the argument narrows the alleged invention to a single element in this combination, we can largely confine our consideration to that element. Appellant's claim is narrowed in the briefs to the single item of the offsetting of the annular depending ring or countersink in the top of the can from the side of the can to the exact distance that the inner ring, bend, or fold projects into the inside of the can, so that upon removal of the tearing strip the countersunk portion of the top slips inside

this inner ring, bend, or fold, with a snug fit, thus sealing the contents.

The accompanying diagram of vertical cross sections, one through a portion of

APPELLANT'S CAN    APPELLEE'S CAN

appellant's can, and the other through a portion of appellee's can, which are substantially as set forth in the briefs of the parties in connection with their respective contentions, illustrate the point thus advanced by the appellant:

We have indicated in cross-hatching, and have marked "X" on each diagram, the portion of the top of can body, in each of the two cans, which appellant claims is covered by the Young patent.

We restate the above proposition in the language of the appellant:

"The thing that was not known or old was the insetting or offsetting of the bung or internal reclosure from the seam by the thickness of the fold or bend so that the material of the can body part which contained the score lines may extend down from the seam on the outside of the fold in a single cylindrical plane to the bottom of the fold or bend itself. The construction of the can beneath the fold or bend is, we submit, unimportant to the consideration of the claims because the structure in which the invention is embodied is located wholly above this portion of the can body."

In view of the claim that the shoulder "X" of the appellee's can infringes the offset "X" of the appellant's patent, it should be stated that the basis of this contention is the assumption that the 3-ply portion of the appellee's can is the equivalent of the internal fold or bend of the appellant's can, which is marked 18 on the above drawing. It is significant that when the application for appellant's patent was pending before the Patent Office, the Examiner in the Patent Office called the attention of the applicant to the similarity between his method of reclosure and that in-

volved in the Ginzler patent (British, 1910). A diagram of a vertical cross section of the Ginzler can is here shown:

GINZLER CAN

It will be observed that in the Ginzler can the inner portion of the cap or cover contacts with an interior bend or fold in the side of the can. The original claims presented by the applicant were rejected by the patent Examiner for lack of novelty over the Ginzler. Attention was also called by the Examiner to a prior French patent to Delpeut and a British patent to Spindler. Thereupon the claims of the Young application were amended to read as they appear in the patent in suit. The written amendments were presented to the Patent Office with the accompanying statement on behalf of the applicant that the patents referred to had been carefully examined, and that:

"In the Ginzler patent there is an upward bend, but it does not extend inward towards the middle of the can, and the upper and lower parts of the can wall have to be out of line with each other to accommodate such a fold. This fold lies parallel with and against the inner face of the can wall and has not the yielding and gripping features of my bend 18. My claims distinguish very clearly from a construction like that in the Ginzler patent. It will be noticed also that in this patent there is no preformed (delineated by score lines) tearing strip but a rude and rough tear is made through the material of the can wall by a stiff internal tearing element, so that this can is entirely unsuitable to provide a replaceable cover.

"In the Spindler and Delpeut patents a replaceable cover may be formed, but it is an outside slip cover.

"I believe that I am the first to provide a can body with an inwardly extending bend, integral with the body, and with a plug closure to fit within said bend and similarly

offset inwards from the double seam of the cover and from the can wall."

No further objections being raised in the Patent Office, the patent in suit was issued to John M. Young, assignor of appellant.

It thus appears that the appellant, in securing his patent, differentiated the inner ring or fold in his device from that in the Ginzler patent, although in the Ginzler patent the folds extend inside the can, that is the can bulges inwardly at the point of the fold; whereas, in the appellee's can the side of the can is vertical in its cross section from the bottom of the can to the upper edge of the collar or band which is produced on the outside of the can at its upper end by an outward double folding of the metal blank or sheet from which the can is formed.

██ It is well settled that, where an applicant whose claim is rejected on reference to a prior patent, without objection or appeal, voluntarily restricts himself by an amendment of his claim to a specific structure, "having thus narrowed his claim * * * in order to obtain a patent the patentee may not by construction, or by resort to the doctrine of equivalents, give to the claim the larger scope which it might have had without the amendments, which amount to a disclaimer." Weber Elec. Co. v. Freeman Elec. Co., 256 U. S. 668, 677, 41 S. Ct. 600, 603, 65 L. Ed. 1162.

In Royer v. Coupe, 146 U. S. 524, 532, 13 S. Ct. 166, 169, 36 L. Ed. 1073, it was stated to be well settled "that where a patentee, on the rejection of his application, inserts in his specification, in consequence, limitations and restrictions, for the purpose of obtaining his patent, he cannot, after he has obtained it, claim that it shall be construed as it would have been construed if such limitations and restrictions were not contained in it." (Citing prior decisions of the Supreme Court to this effect.)

In the amended claims, 1, 2, 3, and 5, relied on by appellant, which we presently quote, it will be observed that each claim speaks of this inner extension of the can body, and the offset equal thereto in the top. These claims are as follows:

"1. A can, comprising a body having score lines setting off a circumferentially arranged tearing strip near the top, the material of the body being bent inwardly within the body adjacent said tearing strip, and away from the line of that part of the can wall which is attached to the cover, and a cover seamed to the upper end of the body and having a downwardly extending friction wall arranged inwardly at a distance from the seam between the cover and body a distance equal to the inward extension of the bend of the body, said friction wall being adapted to enter within the bend after the tearing strip is removed to form a tight and readily removable closure.

"2. A can, comprising a body having score lines setting off a circumferentially arranged tearing strip near the top, the material of the body being bent inwardly within the body adjacent and spaced away from said tearing strip, and a cover seamed to the upper end of the body and having a downwardly extending friction wall offset inwardly from the external wall of the cover above the bend of the body in amount equal to the horizontally inward extension of the bent portion of said body.

"3. A can, comprising a body provided with encircling score lines setting off a tearing strip, said body being bent internally near the top to provide an external friction seat wall of accurate dimension at the top of the body when the tearing strip is removed, and a cover seamed to said body and having an inwardly spaced vertically arranged inner friction wall of horizontal diameter equal to the internal diameter of said external friction seat wall."

"5. A can comprising a body and a cover double seamed to said body, the cover having the usual countersunk portion adjacent the double seam, and having in said countersunk portion another depression of less diameter than said countersunk portion forming a wall to produce an internal friction closure element and the can body having score lines around the same setting off a tearing strip adjacent the double seam, and the body wall being bent inward adjacent the lower score line to form an external friction closure element adapted to receive the said friction closure element of the cover."

██ To interpret the controverted features of the appellee's can in the terms suggested by appellant, or to reach therefrom the conclusion that they embody an infringement of appellant's can, would we think be to disregard the physical features which clearly present themselves to an observer who compares the two cans. As previously stated, the interior of the can-body wall of the appellee's can is at all points straight and wholly devoid of any interior bend or fold or any equivalent of a bend or fold. We do not regard the "collar" of the appellee's can, or the outer fold of the "collar," as being a part of the body wall proper of the can, but view the

"collar" as being a folded band on the exterior of the can-body wall. Nor do we think that in its position on the outside and at the top of the can-body wall there is created, in the conjunction of the "collar" with the adjacent portion of the can-body wall, an interior fold or bend or an equivalent thereof, at or adjacent to the portion of the interior of the can body where the vertical wall of appellee's can cover comes in contact with the interior of the can body. At the points where the can covers come in contact with the can interiors, it is apparent that the nature of the contact and the degree of friction and of yielding, or spring action, although depending to some extent on accurate dimensioning of can-cover wall and can interior, are quite different in the two cans. In appellant's can the wall of its closure cover comes in contact, when a closure is made, with a fold or bend which is formed within the can body, of material integral with the can body and which, as described in the Young patent, is "bent inwardly and * * * thence downwardly * * * the material of the body wall above and beneath the loops being in the same plane"; the bend thus provided being "open so that a rounded internal surface is provided for the reception of the friction plug cover." It may be conceded that, as is stated in the Young patent, the friction seat which is formed by the internal bend "has some yielding and spring action radially to admit the friction element of the cover and tightly conform therewith to make a good closure." As regards appellee's can, its cover is provided with a countersunk or depressed portion forming a vertical wall adapted to slip inside of the top of the can body. The surface of the can interior where the wall of appellee's can cover engages and comes in contact with it is straight and smooth, and devoid of any fold or bend, and, the can interior and cover wall being accurately dimensioned, the cover slips into its proper place so as to make a good closure, with no resistance except such as arises from closeness of fit. There is, obviously, some yielding in the portion of the can body which comes in contact with the can cover when a closure is made; but in view of the absence from appellee's can of an internal fold or bend or any equivalent thereof, and the lack of the spring action that would result from contact between such bend and the cover wall, the nature of the parts which come in contact and of the resistance or friction resulting from contact are quite different in the two cans. If, as claimed by the patentee in his above-quoted answer to the Examiner concerning the Ginzler patent, there is no inner extension of the can body in the Ginzler patent, it is even clearer that there is no inner extension of the can body in the appellee's can. It therefore would seem clear that the shoulder "X" in the appellee's can cannot be said to be the equivalent of the offset "X" in the can made under appellant's patent, as there is in appellee's can no inner rim, fold, or bend equivalent to that in the appellant's can; hence there can be no offset in the top of appellee's can adapted to fit within an offset in the can body created by an inner rim, fold or bend, for there is in appellee's can body no such inner rim, fold, or bend. The differences between the can of appellee and the can of appellant in the controverted portions, while not of wide range, are in our opinion sufficiently distinct in nature, function, and results to sustain the conclusion of noninfringement which was reached by the trial court.

The defendant has filed a cross-appeal from that portion of the judgment which held the appellant's patent valid. In view of our conclusion that there is no infringement, it is unnecessary for us to consider the validity of the appellant's patent.

Judgment affirmed.