## AMERICAN CAN CO. v. M. J. B. CO.

### No. 786.

District Court, D. Delaware.

Aug. 18, 1931.

John C. Carpenter, of Chicago, Ill., and Ward & Gray, of Wilmington, Del., for plaintiff.

Richard J. Cook, of Seattle, Wash., and William G. Mahaffy, of Wilmington, Del., for defendant.

NIELDS, District Judge.

This is a suit in equity brought by American Can Company against M. J. B. Company for infringement of United States patent No. 1,750,251, issued to John M. Young, March 11, 1930, for a "Combination Tearing Strip and Friction Closure Can." The defenses pleaded are invalidity and noninfringement.

The can manufactured by defendant for packaging coffee is the familiar round type of hermetically sealed tin can used as a container of food products. In order that the can may be opened, without impairing its usefulness as a container, an encircling tearing strip is set off by score lines on a collar encircling the outside of the can body near its top. After the removal of the tearing strip the top of the can and the double seam provide a cover for the can. This collar can is a four-piece can. The top and bottom are

joined to the body by double seams. The fourth piece is the collar.

To construct a practical commercial three-piece can, Young made the invention disclosed and claimed in his United States patent No. 1,586,277, issued May 25, 1926. Under this patent the material of the body of the can is deeply beaded inwardly in the form of a loop near the top of the can immediately below the lower score line of the tearing strip. The loop is then bent upwardly and flattened to the desired degree within the can body and behind the portion of the body in which the score lines are arranged to provide the tearing strip. The top or cover has a circular depression to provide a wall adapted to engage frictionally the fold or loop. The distance of this friction wall from the rim of the cover is exactly equal to the projection of the fold or loop within the body of the can. Before the opening of the can, this circular depression in the top of the can is located some distance above and out of engagement with the fold or loop. When the tearing strip is removed, the friction wall of the cover closely engages the loop or fold in the body wall of the can and seals the can. This was the advance step taken by Young in his patent. However, Young did not invent any new form of score lines, any new form of body fold or loop, or any new form of depression in the can cover functioning as a bung.

The earlier Young patent was the subject of a suit between the same parties in the District Court of the United States for the Northern District of California. The can manufactured by the defendant and charged to infringe in that suit is the same can manufactured by the defendant and charged to be an infringement in this suit. The District Court found the claims valid, but not infringed. The Circuit Court of Appeals for the Ninth Circuit found noninfringement, but did not pass on the question of validity. 48 F.(2d) 144.

What was Young's next contribution, if any, to this art? Considering the prior art,, the inventive opportunities open to him were not great, although there may have been room for invention respecting some detail of this can. This is recognized by counsel for the plaintiff in his brief. Regarding both the earlier Young patent and the patent in suit, he states: "It is doubtless true that these inventions and improvements are of relatively narrow patentability."

Certain spilling was incident to the use of the earlier Young patent. To eliminate this fault the patent in suit was conceived. In the specification, the patentee states: "This invention relates to tearing strip cans of the type shown in my co-pending application Serial No. 742,999, now patent No. 1,586,277 May 25, 1926 and has for its principal object the provision of a can constructed to provide the advantages of the structure of said co-pending application and also to provide a plurality of seals between the cover and can body both sealing the can at the same time prior to the removal of a tearing strip by means of which the can is adapted to be opened."

The patent contains three claims. The plaintiff in its bill charges infringement of all. At the trial it disclaimed infringement of claims 1 and 2 and stands upon infringement of claim 3. That claim reads: "A can comprising a body provided with encircling score lines setting off a tearing strip, the material of the body being bent upon itself to provide a friction wall within the can and of diameter less than the diameter of the portion of the body provided with said encircling score lines, and a cover seamed to the body and having a cylindrical wall engaging said portion of said body provided with said score lines and having also a substantially vertical friction seat wall inset from said first mentioned wall by the thickness of the bend and engaging within the friction seat wall of the body prior to the removal of said tearing strip."

Defendant contends that claim 3 is invalid, relying principally upon Ginzler British patent, No. 20,059 of 1910; Peltier United States patent, No. 535,855; Larkin United States patent, No. 692,382; and the earlier Young patent. As the field of patentability between the prior art and the earlier Young patent was narrow, it necessarily follows that the field of patentability between the prior art and the patent in suit was still further limited.

The only difference between the can of the patent in suit and the can of the earlier Young patent is a lowering of the depression in the cover so that the wall of the cover frictionally engages the internal bend of the can body forming a seal before the removal of the tearing strip. Spilling was thus prevented. As the patentee states in the specification, the improvement afforded a plurality of seals prior to the removal of the tearing strip—the plurality of seals consisting of the double seam connecting the body with the cover and the air-tight seal formed by the frictional engagement of the depressed wall

of the cover with the inwardly bent portion of the body wall. The testimony of the patentee is not without significance on this point. In the California case he stated, in substance, that the extension of the friction wall of the cover of the earlier Young patent to engage the internal bend before the removal of the tearing strip—the distinguishing feature in the patent in suit—was an obvious thing. On the other hand, he testified in this court that such extension was not obvious, but involved invention and was a patentable improvement upon the earlier Young patent. Under well-settled principles, defendant strongly urges that such improvement, if improvement it be, did not involve invention, but only mechanical skill. I doubt the validity of claim 3 of the Young patent in suit. In view of the conclusion hereinafter reached as to infringement, it is unnecessary to consider any further the question of validity. It clearly appears that the claim is subject to a narrow and strict construction.

It is a sound general premise that all the elements of claim 3, or their mechanical equivalents, must be found in defendant's can. We have already found that the claim is subject to a strict and narrow construction, and it follows that the range of mechanical equivalents must be correspondingly restricted. If the terms of claim 3 be considered as the terms of an independent grant without any explanation from the specification of the patent, what do we find? The words, "the material of the body being bent upon itself to provide a friction wall within the can" prescribe an element—an essential element of claim 3. These terms define the direction in which the material is bent and the purpose for which the material is bent. If the material is bent at all, it must be bent laterally within or without the line of the wall of the can. Here the material is bent inwardly to provide a friction wall within the can affording a seal with the friction wall in the depression of the cover. This characteristic element of plaintiff's claim is wholly lacking in defendant's can. The material of defendant's can is bent outwardly—without and not within the can—to provide an encircling collar around the top of the can for a tearing strip and a flange with which to double seam the cover. By no stretch of the imagination can the material of defendant's can be considered "bent upon itself to provide a friction wall within the can," since the only friction wall in defendant's can is the inside wall of the can which is provided before the material is bent. Moreover, defendant's top or cover does not form a seal with the inside wall of the can, but merely engages the inside of the can like any other slip cover. It plainly follows from construing the terms of claim 3 in connection with the explanation contained in the specification that a distinguishing element of the claim is not found in defendant's can.

Another accepted rule is that, where a patentee places a limitation upon his invention in the prosecution of his application in the Patent Office to avoid cited prior art and to obtain the allowance of his patent, such limitation must be strictly construed against the inventor. Weber Elec. Co. v. Freeman Elec. Co., 256 U. S. 668, 41 S. Ct. 600, 65 L. Ed. 1162; Smith v. Magic City Club, 282 U. S. 784, 790, 51 S. Ct. 291, 75 L. Ed. 707.

In the Patent Office, Young found it necessary to distinguish his later invention from the Ginzler patent. He drew a distinction between a fold (which Ginzler as well as defendant has) and an "inwardly projecting and interiorly rounded bead" and a "hollow bead which is rounded and so shaped as to be elastic and having a little upward and inward spring." As originally filed, the application contained ten claims. All were rejected on the patent to Ginzler. The patentee pointed out to the Examiner that in the Ginzler can the can body "is not bent inward to form a bead." The claims were again rejected, the Examiner citing the earlier Young patent, No. 1,586,277, and the United States patent to Widell, No. 1,621,389, as additional references. In response to this rejection, five new claims were added and a reconsideration sought. What Young was seeking was an air-tight seal to be brought about by engagement of the internal bend in the body of the can with the friction wall of the cover both before as well as after the tearing strip was removed. To avoid the citations of the examiner, Young stated: "My present claims are for an inner and second seal formed by the friction element of the cover at the time the top is sealed to the can to form the outer seal. The improved result is that I provide the can with two seals, so that if the outer seal should accidentally be defective, the inner seal will still protect the contents of the can. I am not aware of an inner seal having been provided heretofore in the manner which I claim." The claims were again rejected. Thereupon the applicant, acquiescing in the prior rejections, canceled all claims and inserted claims 1 and 2, drawn specifically to the structure as illustrated and described in the patent in suit. Three claims

were allowed. The inventive idea supporting the claims was the provision of an inwardly bent hollow looped flange, and the lowering of the friction wall of the cover to engage therewith.

The California suit had been tried in the District Court. Doubtless the plaintiff was satisfied that the defendant's can structure, involved in that suit and likewise involved in this suit, did not embody the inwardly bent hollow looped flange. After a decree finding noninfringement had been entered in that suit, Young presented to the Patent Office an amendment embodying claim 3. This claim was evidently drawn to avoid the limitation of the hollow feature in the bend and to cover defendant's structure. In submitting the amendment the patentee stated: "This amendment is made after a conference had today by applicant's attorney with the principal and assistant examiners having charge of this application. The subject matter of the claim is generally that of the two allowed claims in the case. It differs from these claims, however, in that it does not require the provision of a hollow loop to form the internal friction seat wall since this seems to be an unnecessary limitation. The openness of the bends is believed unimportant to the patentability of the invention, the requirement being that the friction seat wall of the cover be inset from the tearing strip by the thickness of the fold or bend." Without further correspondence between the applicant and the Patent Office, claim 3 was allowed. While the patentee was within his rights in submitting the amendment after the decree in the California case, under the circumstances a claim so inserted must be carefully scrutinized. The claim eliminates the "hollow" feature of the loop of claims 1 and 2, but retains the qualifying clause "to provide a friction wall within the can," which, as already found, can only mean the inwardly bent portion of the wall of the can body.

It is clear that claim 3 does not dominate defendant's structure.

Plaintiff contends that defendant's can, like the can of claim 3, is a three-piece can consisting of a body and two ends with the two ends seamed to the can body. In a manufacturing sense defendant's can is a three-piece can, but in a structural sense it is a four-piece can. For economy and facility in manufacture defendant uses a body blank which is folded outwardly and downwardly and thence outwardly and upwardly forming a band or collar. If the collar was superimposed upon the can body, it would not be more completely a fourth piece. The score lines of the can of claim 3 are in the body of the can. The score lines in defendant's can are in the outer layer of the band or collar. In the can of claim 3 the cover is seamed to the can body. In defendant's can the cover is seamed to the collar. The interior of the body wall of defendant's can is at all points perfectly straight, unobstructed, and devoid of any internal bend. The cover of defendant's can provides the well-known slip engagement with the wall of the can body in contradistinction to the friction-tight seal sought by Young in the patent in suit. The internal bend of the Young patent, whether with or without the hollow loop, is for the definite purpose of providing a seal within the can body. In defendant's can the band or collar lies on the outer face of the body wall of the can, and its folds are pressed tightly together. It has no spring or yielding action. It was not the object of the defendant and is not inherent in the structure of defendant's can to produce a plurality of seals of any description by the addition of the band or collar upon the can body. In no sense does the band or collar on the outside of the body wall of the can supply an internal bend in the can corresponding structurally or functionally to the "body bent upon itself to provide a friction wall within the can."

Therefore "the material of the body being bent upon itself to provide a friction wall within the can" is an element of claim 3 entirely absent from defendant's can, when that claim is properly construed. The absence of a single element from a device that is alleged to infringe a patented combination is fatal to the claim of infringement. Cimiotti Unhairing Co. v. Amer. Fur Ref. Co., 198 U. S. 399, 410, 25 S. Ct. 697, 49 L. Ed. 1100. It is unnecessary to consider other grounds advanced by the defendant.

The bill of complaint must be dismissed.